579 So.2d 80 (1991)
Boris McKINNEY, Appellant,
v.
STATE of Florida, Appellee.
No. 74867.
Supreme Court of Florida.
May 2, 1991.
*81 William A. Cain, Special Asst. Public Defender, North Miami Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Giselle D. Lylen, Asst. Atty. Gen., Miami, for appellee.
BARKETT, Justice.
Boris McKinney appeals convictions for first-degree murder and other felonies and the resulting sentences, including a sentence of death.[1] We affirm the convictions and sentences with the exception of the death penalty.
The convictions all arise from events that occurred on February 12, 1987, when a witness observed a black male wearing a red shirt dump a body from a white four-door sedan into an alley and drive away. Police and fire rescue units responded to the witness's call. The victim, Franz Patella, was semiconscious, suffering from seven gunshot wounds on the right side of his body and two acute lacerations on his head. He told police he had been shot by an unknown black man after he stopped his rental car to ask directions to I-95. He also gave a description of the car and a partial tag number. Patella died shortly after arriving at the hospital. Subsequent investigation revealed that Patella owned a condominium resort in Nassau and was in Miami to obtain supplies for the resort. Witnesses testified that Patella had left Nassau with $11,000 in cash, of which only $1,500 was accounted for in receipts following his murder. They also testified that Patella wore a gold Rolex watch and carried a wallet. The remainder of the cash and Patella's watch and wallet were never recovered.
At 10:15 that same night, police spotted the rental car traveling down the street and followed it to a convenience store where they arrested the occupants, McKinney and another man, Wilfred Gaitor, both of whom were wearing red shirts. McKinney was interviewed throughout the night and gave various accounts of his presence in the car. He first denied his involvement and stated that Gaitor had committed the murder. Later, McKinney accused a third man, Benny Copeland, then changed his story, saying that both Copeland and Gaitor had killed Patella. When police told McKinney that they did not believe him, McKinney admitted to the murder and related details. Police then had McKinney lead them to the location of the shooting and to a dumpster where they recovered Patella's attache case containing some personal papers. Police found McKinney's fingerprints both in the car, including its gear handle, and on the attache case and its contents. Gaitor's fingerprints were found only in the car, and Copeland's fingerprints were not found either in the car or on the briefcase.
After returning to the station, McKinney agreed to make a formal statement, but *82 again changed his story and denied all involvement. Both in his statement and later at trial, McKinney claimed the officers had beaten him to obtain the confession. McKinney was convicted of first-degree murder, unlawful display of a firearm during the commission of a felony, armed robbery, armed kidnapping, armed burglary of a conveyance, and grand theft of an automobile.
During the penalty phase, McKinney's mother testified that McKinney was the youngest of seven children and that she had raised the children alone. She indicated that McKinney was very slow in school and unable to keep up with his classes. Dr. Leonard Haber, a clinical psychologist, testified that McKinney was on the borderline of mental deficiency. He stated that McKinney tested as having borderline intelligence, slightly above beginning mental deficiency, and that the tests indicated possible organic brain damage. He further testified that McKinney's school records show a history of attention deficit disorder in childhood, a learning disability, and chronic disruptive behavior. He also stated that interviews with McKinney revealed a substantial and varied alcohol and drug history. Dr. Barry Crown, a clinical forensic psychologist and neuropsychologist, also testified that McKinney was mentally impaired. The state offered in rebuttal the testimony of two doctors who had found no evidence of mental impairment. However, they had examined McKinney only to determine his competency to stand trial and had performed no intelligence tests or background investigation.
The jury recommended the death penalty by a vote of eight to four. The court found three aggravating circumstances: The murder was unnecessarily heinous, atrocious, or cruel;[2] the murder was cold, calculated, and premeditated;[3] and the murder was committed while McKinney was engaged in the commission of a robbery, kidnapping, and burglary.[4] In mitigation, the court found the statutory circumstance of no significant history of prior criminal activity,[5] and gave little or no weight to nonstatutory circumstances. The court imposed the death penalty for the murder and consecutive life sentences for the armed robbery, kidnapping, and burglary counts.
The first issue on review is whether McKinney was denied effective assistance of counsel, and therefore denied a fair trial guaranteed by the sixth and fourteenth amendments to the United States Constitution and by article I, section 16 of the Florida Constitution. McKinney argues that the record clearly reflects multiple actions of defense counsel[6] which constitute ineffective assistance of counsel and mandate reversal.
Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief. E.g. Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). The trial court is the more appropriate forum to present such claims where evidence might be necessary to explain why certain actions were taken or omitted by counsel. Thus, we reject this claim as inappropriate at this time without prejudice to McKinney's right to raise the issue by way of Florida Rule of Criminal Procedure 3.850.
We find no merit to McKinney's second claim that the state failed to establish a corpus delicti prior to the admission of McKinney's confessions. To establish the *83 corpus delicti of murder, the state need only show:
(1) [T]he fact of death; (2) the existence of the criminal agency of another; and (3) the identity of the deceased.
Buenoano v. State, 527 So.2d 194, 197 (Fla. 1988). Ample evidence independent of McKinney's statements was adduced at trial to establish the corpus delicti of each offense. McKinney concedes this definition and the proof to meet it, but urges that we require the state to prove in addition that the death was caused by the criminal act or agency of the defendant. This is an essential element of the crime which the state must establish to prove the defendant's guilt. We decline to expand the corpus delicti to include this element.
Next, McKinney claims that the court committed fundamental error when it discovered its bailiff had an ex parte communication with the jury and failed to declare a mistrial, or in the very least, to instruct the jury to disregard the bailiff's comments. During deliberations, the jurors summoned the bailiff to ask whether they should have separate verdict forms for premeditated and felony first-degree murder. The bailiff "told them [premeditated murder] was part of the instructions. They were not to rule on premeditated murder." The bailiff reported this exchange to the judge who called in the jury and reinstructed it on the verdicts for first-degree murder. Defense counsel neither objected to the judge's handling of the matter nor moved for a mistrial.
Section 918.07, Florida Statutes (1985), provides that an officer in charge of jurors "shall not communicate with the jurors on any subject connected with the trial." The bailiff's remark to the jury concerning premeditated murder falls within this prohibition and clearly constitutes error. See, e.g., Thomas v. State, 348 So.2d 634 (Fla. 3d DCA 1977); Ennis v. State, 300 So.2d 325 (Fla. 1st DCA 1974). This error requires a reversal of the conviction and a new trial if the error prejudiced the defendant such that his substantive rights were violated. See Ennis, 300 So.2d at 328; § 924.33, Fla. Stat. (1985). Prejudice exists where there is a reasonable possibility that the bailiff's communication affected the jury's verdict. See State v. Hamilton, 574 So.2d 124 (Fla. 1991); Thomas, 348 So.2d at 635.
In Thomas, the bailiff told the jury during deliberations that the judge would declare a mistrial unless the jury reached a unanimous decision. 348 So.2d at 635. The court found this comment prejudicial to the defendant because it may have deprived him of a "hung jury." Id. Likewise, the court in Ennis found error where the bailiff told the jury that the robbery victim kept his money in the bank. 300 So.2d at 327. However, the court found the error was harmless because the bailiff's comment was favorable to the defendant, rather than prejudicial, since the robbery allegedly occurred at the victim's home.
We find the bailiff's comment in the case before us analogous to the situation in Ennis. Even though the bailiff told the jury "not to rule on premeditated murder," that instruction if followed could only help the defendant since it could diminish the possibility that the jury might find him guilty of premeditated murder.
In addition, upon learning of the jury's question, the trial judge immediately called the jury in and, in the presence of the defendant and both counsel, advised it of the proper procedure for the court to respond to its questions. Although the judge did not specifically instruct the jury to disregard the bailiff's comments, he did completely reinstruct it on the possible verdicts for the murder charge. In view of the nonprejudicial nature of the bailiff's comment, as well as the corrective action taken by the trial court, we are persuaded beyond a reasonable doubt that the bailiff's comment did not affect the verdict. Thus, under the facts in this case, the error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
McKinney next argues that the court erred when it failed to instruct on the lesser-included offense of false imprisonment after it gave an instruction on kidnapping. However, the trial court's failure to *84 instruct on the lesser-included offense of false imprisonment is not preserved for review unless the trial counsel objects to the instruction given. See State v. Sanborn, 533 So.2d 1169 (Fla. 1988); Parker v. Dugger, 537 So.2d 969 (Fla. 1988); Jones v. State, 484 So.2d 577 (Fla. 1986). McKinney's failure to request the instruction on false imprisonment and his failure to object to the trial court's failure to include it procedurally bar review of this claim.
We next reject McKinney's claim that his convictions of both robbery and grand theft resulted in unlawful multiple punishments for a single act. The convictions are based upon different acts of the defendant: The conviction for grand theft was for the taking of the automobile, and the conviction for robbery was for the taking of Patella's watch and wallet. See, e.g., Waters v. State, 542 So.2d 1371 (Fla. 3d DCA 1989). We likewise reject on the facts of this case McKinney's claim that he was unlawfully subjected to multiple punishments for the conviction of possession of a firearm during a felony.
McKinney also claims error in the penalty phase. He argues that the sentence of death was inappropriate and disproportionate and that the aggravating circumstances of heinous, atrocious, or cruel; and cold, calculated, and premeditated are inapplicable in this case. We have consistently emphasized that in capital sentencing proceedings, aggravating circumstances must be proven beyond a reasonable doubt before they may be weighed by the judge. See, e.g., Hamilton v. State, 547 So.2d 630, 633 (Fla. 1989); Atkins v. State, 452 So.2d 529, 532 (Fla. 1984). We agree that on this record these aggravating circumstances have not been proven beyond a reasonable doubt.
We note initially that the record is unclear on the exact sequence of events that led to Patella's death. A police detective testified that McKinney told him that he jumped into Patella's unlocked car and hit Patella on the head. McKinney then reportedly ordered Patella to drive to an overpass where he shot the victim. It is unclear who drove the car the approximately two blocks to the alley where the body was dumped, but according to the detective, McKinney shot the victim twice more in the alley. However, the eyewitness who saw the body dumped testified that he heard no shots. The entire sequence of events took only minutes.
The circumstance of heinous, atrocious, or cruel is appropriately found "only in torturous murders  those that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another." Cheshire v. State, 568 So.2d 908, 912 (Fla. 1990) (citing State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). "[A] murder by shooting, when it is ordinary in the sense that it is not set apart from the norm of premeditated murders, is as a matter of law not heinous, atrocious, or cruel." Lewis v. State, 398 So.2d 432, 438 (Fla. 1981) (circumstance not proven where victim received multiple rifle and shotgun wounds). We do not find evidence proving beyond a reasonable doubt that this murder was committed in a manner that sets it apart from the norm of capital felonies. The evidence in the record does not show that the defendant intended to torture the victim. While it is true that the victim was shot multiple times, a murder is not heinous, atrocious, or cruel without additional facts to raise the shooting to the shocking level required by this factor. See Shere v. State, 579 So.2d 86, 96 (Fla. 1991) (multiple gunshot wounds, by themselves, do not establish murder was heinous, atrocious, or cruel); Menendez v. State, 368 So.2d 1278 (Fla. 1979) (factor not found where victim was shot twice with arms in submissive position). We cannot find beyond a reasonable doubt that this murder was heinous, atrocious, or cruel where the record does not supply additional facts apart from the gunshot wounds themselves.
The circumstance of cold, calculated, and premeditated murder is generally only found in planned or contract or execution-style murders where there is evidence *85 of heightened premeditation. See, e.g., Pardo v. State, 563 So.2d 77 (Fla. 1990).
The Court has adopted the phrase "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of first-degree murder. Heightened premeditation can be demonstrated by the manner of the killing, but the evidence must prove beyond a reasonable doubt that the defendant planned or arranged to commit murder before the crime began.
Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990) (citations omitted); see Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
The record does not prove beyond a reasonable doubt the presence of a calculated or prearranged plan to support this circumstance. There is no evidence in the record that the defendant planned to commit any crime at all until the opportunity presented itself. Since this crime occurred only through a chance encounter, the evidence does not rise to the level of "heightened premeditation" required by this circumstance. See, e.g., Lloyd v. State, 524 So.2d 396, 403 (Fla. 1988).
Having found that two aggravating circumstances are unsupported by the record, this death sentence is now supported by just one aggravating circumstance  that the murder was committed during the course of a violent felony. As we have previously noted, "this Court has affirmed death sentences supported by one aggravating circumstance only in cases involving `either nothing or very little in mitigation.'" Nibert v. State, 574 So.2d 1059, 1063 (Fla. 1990) (quoting Songer v. State, 544 So.2d 1010, 1011 (Fla. 1989)). Here, the trial court found as a statutory mitigating circumstance that McKinney had no significant history of prior criminal activity. In addition, McKinney presented substantial mitigating evidence relating to his mental deficiencies and alcohol and drug history. In light of the existence of only one valid aggravating circumstance, as well as the statutory and nonstatutory mitigating evidence present here, the sentence of death is disproportional when compared with other capital cases where this Court has vacated the death sentence and imposed life imprisonment. See Lloyd, 524 So.2d at 403 (and cases cited therein).
Accordingly, we affirm McKinney's convictions and sentences, except for the death sentence which we vacate, and remand for imposition of a sentence of life imprisonment.
It is so ordered.
SHAW, C.J., and GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in the conviction, but dissents to the sentence.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I dissent. Although I find that the death penalty may be appropriate in this case, I have difficulty voting on the merits because I find that counsel's representation of this appellant justifies an evidentiary hearing on the issue of ineffective assistance of counsel. To require this issue to be addressed in a subsequent postconviction proceeding only delays the judicial process and creates unnecessary work for prosecutors, defense counsel, and the judiciary. This holding sets a bad precedent that encourages multiple judicial proceedings by requiring that we first consider this matter on the merits with leave for the ineffective assistance of counsel claim to be addressed in a subsequent Florida Rule of Criminal Procedure 3.850 proceeding. What I am suggesting is not new. In Francis v. State, No. 50,127 (Fla. June 20, 1978), in an unreported order, we relinquished jurisdiction so that Francis could file a rule 3.850 motion on the ground of ineffective assistance of counsel. In that instance, the trial judge granted relief and ordered a new trial. In this case, I would remand for further proceedings on the ineffective assistance of counsel claim and, after that *86 issue is properly resolved, address the issues on the merits.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
[2] § 921.141(5)(h), Fla. Stat. (1985).
[3] Id. § 921.141(5)(i).
[4] Id. § 921.141(5)(d).
[5] Id. § 921.141(6)(a).
[6] His claims include casting aspersions on the deceased by calling him a "Nazi"; accusing police witnesses of corrupt police procedures; accusing other witnesses of lying; making references to other notorious cases; violating the "golden rule"; objecting to the introduction of an unsigned confession, the bulk of which had been related to the jury by a police officer, and which contained repeated exculpatory references to beatings and physical abuse by the police; and failing to preserve critical issues for appeal, such as the bailiff's improper comments to the jury and instructions on necessarily included lesser offenses.