793 So.2d 119 (2001)
Adolphus MERRICKS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-789.
District Court of Appeal of Florida, Second District.
August 17, 2001.
*120 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Adolphus Merricks appeals his conviction for sexual battery and attempted sexual battery, arguing that the trial court erred in denying his motion for mistrial based upon an improper communication between a bailiff and the jury. We agree and reverse because the bailiff answered a question submitted by the jury outside of the presence of the trial judge, defense counsel, and the prosecutor.
After the jury retired to deliberate, a juror stuck his head out of the jury room and told the bailiff that the jury would like to have some of the testimony read back. Before the bailiff could do anything in response, another bailiff told the jury, "You'll have to rely on your memories," and shut the door. Upon being notified of what had transpired, the trial judge asked a bailiff to have defense counsel and the prosecutor gather in the courtroom so that he could advise them of the interaction between the bailiff and the juror. The bailiff returned approximately one minute later and advised the judge that the jury had announced that they had reached a verdict.
Before receiving the jury's verdict, the judge discussed the incident with defense counsel and the prosecutor. The judge acknowledged that the bailiff's communication with the juror was improper but told counsel that he, in all likelihood, would have given the same response. The prosecutor did not object to the improper communication and argued that the error was harmless. Defense counsel, however, objected and moved for mistrial. The trial court found that the communication was inadvertent and was done without the knowledge of the court or anyone else, and that the jury advised the bailiff that it had reached a verdict immediately after it was given the response by the bailiff. The trial court then concluded that, based on these circumstances, any error involved would not be prejudicial to Merricks and denied the motion for mistrial.
Merricks argues, and we agree, that the interaction between the bailiff and the jury violated Florida Rule of Criminal Procedure 3.410, which provides:
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
A violation of rule 3.410 is ordinarily per se reversible error. In Ivory v. State, 351 So.2d 26 (Fla.1977), the supreme court first articulated a per se reversible error rule where a trial court responded to a jury's question without giving counsel notice and opportunity to participate in the *121 discussion of the action to be taken on the jury's request. The court reaffirmed its holding in Ivory in subsequent decisions. See Mills v. State, 620 So.2d 1006 (Fla. 1993); State v. Franklin, 618 So.2d 171 (Fla.1993); Colbert v. State, 569 So.2d 433 (Fla.1990); Williams v. State, 488 So.2d 62 (Fla.1986); Curtis v. State, 480 So.2d 1277 (Fla.1985). However, in Thomas v. State, 730 So.2d 667 (Fla.1998), the supreme court explained that the rule announced in Ivory is prophylactic in nature and must be invoked by contemporaneous objection. Thus, in Thomas, where defense counsel communicated his acceptance of the procedure employed, the issue was considered waived and the rule 3.410 violation was not reversible error. Unlike in Thomas, here, defense counsel objected to the improper communication and moved for mistrial. Based on these facts, we conclude that reversible error occurred. Accordingly, we reverse and remand for a new trial. However, we are persuaded by the dissent to certify to the Supreme Court of Florida the following question as a matter of great public importance:
IS A BAILIFF'S OFF-THE-RECORD ANSWER TO A JURY'S QUESTION AN ERROR REQUIRING PER SE REVERSAL OR MAY IT BE SUBJECTED TO A HARMLESS ERROR ANALYSIS UNDER STATE V. DIGUILIO, 491 So.2d 1129 (Fla.1986)?
Reversed, remanded, and question certified.
SALCINES, J., Concurs.
ALTENBERND, A.C.J., Dissents with opinion.
ALTENBERND, Acting Chief Judge, Dissenting.
I fully understand why the majority believes that Ivory v. State, 351 So.2d 26 (Fla.1977), and its progeny control this case. Nevertheless, I would hold that the per se error rule announced in Ivory applies only in cases in which the violation of Florida Rule of Criminal Procedure 3.410 involves misconduct by the trial judge. In this case, the judge did not disobey rule 3.410; the bailiff did. When a bailiff violates that rule, I do not believe that the trial judge is compelled to declare a mistrial. I would subject such an error to a harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986). See, e.g., Walker v. State, 546 So.2d 1165 (Fla. 3d DCA 1989). Although many violations of rule 3.410 by court personnel might not survive a DiGuilio harmless error analysis, the error in this case is nonetheless harmless beyond a reasonable doubt.
The basic facts of this case are accurately stated in the majority opinion. The trial judge's conversation with the lawyers and the jury when the problem was discovered, however, warrants careful review. Rather than paraphrase this conversation, I provide a transcription of the discussion in an appendix to this dissent. That conversation convinces me that the error was harmless and that a new trial to correct a per se error is unnecessary. The bailiff did not tell the jury about any evidentiary information outside the record and did not give them inaccurate information. He merely gave the jury the same procedural information that the trial judge would have given them in open court.
The per se error rule should only apply to errors that an appellate court cannot adequately assess for harmlessness using the content of the appellate record. See State v. Schopp, 653 So.2d 1016 (Fla.1995) (abandoning per se error rule when trial court fails to conduct Richardson[1] hearing in noncapital cases where reviewing court *122 can establish from record that error was harmless). It should not apply if the trial court could fully cure the error at the point when it was discovered. I agree that errors affecting the structure of a trial often qualify for per se error treatment. With some hesitation, I understand why appellate courts in this state have concluded that a trial judge who violates rule 3.410 commits an incurable error that cannot be assessed for harmlessness on appeal. Although ex parte communications between a bailiff and a juror are inappropriate, it does not appear to be the type of error that will always result in a "structural defect in the constitution of the trial mechanism, which [defies] analysis by `harmless-error' standards." Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
Ivory and most, if not all, of the other cases that invoke the per se error rule involve violations of this rule of procedure by the trial court judge when he or she communicates with the jury without allowing the parties to participate in this process. See, e.g., Mills v. State, 620 So.2d 1006 (Fla.1993); State v. Franklin, 618 So.2d 171 (Fla.1993); Williams v. State, 488 So.2d 62 (Fla.1986); Curtis v. State, 480 So.2d 1277 (Fla.1985). In some Florida cases, communications to jurors by court personnel have been subjected to a harmless error analysis. See, e.g., McKinney v. State, 579 So.2d 80 (Fla.1991) (finding bailiff's ex parte communications with jurors during deliberations to be harmless error where court provided corrective measures); Walker, 546 So.2d 1165 (finding harmless error when bailiff responded to juror's request for map of crime scene by stating that map was not in evidence because statement was innocuous). Many other states and the federal courts appear to employ a harmless error analysis in this context. See, e.g., Johnson v. Kentucky, 12 S.W.3d 258 (Ky.1999); Washington v. Bourgeois, 133 Wash.2d 389, 945 P.2d 1120 (1997) (en banc); Hallmon v. United States, 722 A.2d 26 (D.C.Cir.1998); United States v. Patterson, 644 F.2d 890 (1st Cir. 1981).
Moreover, in Thomas v. State, 730 So.2d 667, 668 (Fla.1998), the supreme court held that the per se rule is "prophylactic in nature" and must be preserved by adequate objection. Because this matter was disclosed by the trial judge before the verdict was accepted, any possible error could have been cured by additional instruction followed by renewed deliberations. If the defendant thought that the bailiffs statement was an error requiring correction, it could have requested relief. The defendant did not request such relief, even when the judge suggested it.
Although the defendant may technically have preserved this issue for review by asking only for a mistrial, I believe the defendant has waived the right to claim per se error by rejecting other adequate methods to correct the error in the trial court. The trial judge carefully considered this matter and discussed it with the jury in open court before accepting the verdict. I fail to see a preserved error in this record that is not harmless beyond a reasonable doubt. Thus, I would not apply the per se reversible error rule.
It is relatively easy for appellate courts to regulate the in-court conduct of trial judges. Attempting to police the out-of-court and off-the-record comments of bailiffs to juries is entirely another matter. Regulating such conduct of bailiffs with a rule requiring per se reversal may create more problems than solutions.

APPENDIX
(These proceedings took place at 6 p.m.)
THE COURT:
Thank you.

*123 Okay. Note the presence of the defendant.
Counsel, I need to advise you and confirm thatwhat has transpired in this matter and do it of record.
I was advised by theone of the bailiffs a few minutes ago of an incident that took place that all completely took place before I was advised of it, that the bailiff came to my chambers to advise me that the jurysomeone from the jury knocked on the jury room, stuck their head out, and said, "We'd like to have some of the testimony read back."
And before that bailiff could do anything to respond, another bailiff told the jury, "You'll have to rely on your memories," and shut the door.
The bailiff, the first bailiff, came to my chambers to report that to me. I advised him to gather up the court personnel and counsel so I could advise counsel of that and discuss it.
And frankly, in all likelihood, I want to indicate that my reaction would probably have been to that question "We'd like some testimony read back," would probably have been, in all likelihood to the jury, bring them in and tell them, "You're going to have to rely on your memory," exactly what the bailiff told them, for the record.
Everyone at this point understands and the bailiff will subsequently understand that it is entirely, solely, and exclusively the province of the Court to have such conversations with the jury in the presence of counsel, and not the bailiff. And that's an issue that will be addressed separate and apart from its relationship to this case.
But the rest of the story is that after I sent the bailiff out of my chambers to gather everybody, he returned a minute later and said the jury then notified the bailiffs that they had a verdict. And upon hearing that, I had him continue to notify everybody, and we have discussed it.
We have a verdict that the jury has come back with, and at this time I want to confirm on the record the events that transpired and give counsel an opportunity to be heard on theon where we are and discuss receiving the verdict.
Ms. Kennedy, on behalf of the State?
MS. KENNEDY (Assistant State Attorney):
Judge, at this point we're raising no objection and ask that you take the verdict, that I think everything that itit would result in harmless error, and for that reason, we ask that we receive the verdict.
THE COURT:
Okay. Thank you.
Mr. Showers.
MR. SHOWERS (Defense Attorney):
Your Honor, at this time we will object to that. We feel that it would be prejudicial to Mr. Merricks.
THE COURT:
Okay. Thank you, Mr. Showers.
Is there any suggestion of anything that the Courtyou would like the Court to do to deal with the issue to mitigate or eliminate any potential prejudice?
MR. SHOWERS (Defense Attorney):
Your Honor, I guess we would move for a mistrial.
THE COURT:
Okay. I will deny that motion. Under the circumstances, I believe that what was done was inadvertent and notinadvertent and certainly not with the knowledge of the Court or anyone else and would not have been done had the *124 Court had the opportunity to know about it in advance and deal with it.
But at this point, given the circumstances of the jury immediately advising of a verdict, I do not find that any error involved would be prejudicial to the defendant. And at this time I intend to proceed to receive the verdict from the jury.
Anything further?
Shall we bring the jury back in and receive the verdict?
Mr. Showers, would you like me to inquire of the jury about the issue of the question of the testimony?
MR. SHOWERS (Defense Attorney):
No, your Honor.
THE COURT:
No? Okay. Because I would be happy to do so before receiving the verdict.
MS. KENNEDY (Assistant State Attorney):
Judge, actually, I think to preserve the record for appeal, I mean, in order for the Court to decide whether it truly was harmless error, I think they would have to know whose testimony it was to be read back.
THE COURT:
Well, that was the reason for asking, for offering the inquiry.
(The jury entered at 6:06 p.m.).
THE BAILIFF:
The jury is in the jury box, your Honor, and they indicated they have reached a verdict.
THE COURT:
Okay. Madam Foreperson, the jury has reached a verdict?
THE FOREPERSON:
M'hum (affirmative).
THE COURT:
Would you hand that to the bailiff, please.
Thank you.
And ladies and gentlemen of the jury, before I read the verdict and publish the verdict, I'd like to inquire. I understand that there was an issue of a possible request to have testimony of a witness read back immediately prior to the jury reaching the verdict.
Madam Foreperson, can you confirm?
THE FOREPERSON:
Yes, sir.
THE COURT:
Okay. And the Court was not advised of that request before the verdict came back. Can you indicate for me what the request was or the nature of the request specifically.
THE FOREPERSON:
We had some discussion trying to recall some of the testimony and thought if it was easy for us to have it read back it might clarify it.
When we were initially told, no, that's normally not the case, we came back and discussed it further and then felt comfortable with our decision.
THE COURT:
Okay. Very good.
Under the circumstances, the advice you should have gotten from me and would have gotten from me, the direction would have been to rely upon your own memories.
So, really, where you are now and where you are, having reached a verdict, sounds like it'sit's where you intend to be
THE FOREPERSON:
Right.
THE COURT:
 here you want to be. Is that right?

*125 THE FOREPERSON:
M'hum (affirmative).
THE COURT:
Okay. Counsel, would you like me to inquire on anything further?
MS. KENNEDY (Assistant State Attorney):
No, Judge.
THE COURT:
Mr. Showers?
MR. SHOWERS (Defense Attorney):
No, your Honor.
THE COURT:
Okay. I will confirm the ruling on the defense's motion previously after having considered the information.
Okay. The Court finds that there are no errors or omissions in the filling out of the verdict form.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).