650 So.2d 1044 (1995)
Clarence HARTLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2896.
Court of Appeal of Florida, Fourth District.
January 11, 1995.
Rehearing and Certification of Question Denied February 13, 1995.
*1046 Richard L. Jorandby, Public Defender, and Paul E. Petillo, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.
STEVENSON, Judge.
Appellant, Clarence Hartley, was convicted of the sale of cocaine within 1,000 feet of a school, declared an habitual felony offender and sentenced to thirty years in state prison.
In this appeal, appellant challenges his assignment to the Fifteenth Judicial Circuit's habitual felony division and argues (1) that the division was improperly created by administrative order and (2) that the creation of the division violated the separation of powers doctrine. Additionally, appellant, an African-American, argues that the trial court erred in failing to conduct an evidentiary hearing on his claim that the over representation of minority defendants in the new habitual felony offender division violated the equal protection and due process clauses of the state and federal constitutions. We have carefully considered all of the claims raised by appellant. Because we agree that the division was improperly created by administrative order, we vacate appellant's sentence and remand for a new sentencing hearing.
At the center of controversy in this appeal is the Fifteenth Judicial Circuit's Administrative Order No. 3.028-5/91. Pursuant to rule 2.050, Florida Rules of Judicial Administration, the chief judge of the Fifteenth Judicial Circuit, established "a special court ... to hear cases involving ... serious habitual felony offenders... ." The preamble to the administrative order outlined reasons for establishing the new division  "the Legislature has found that `a substantial and disproportionate number of serious crimes is committed in Florida by a relatively small number of multiple and repeat felony offenders'"  and the objectives hoped to be fostered by its creation  "the designation of a special court, within the criminal division, to hear cases involving a restricted category of serious habitual felony offenders will permit the Court to handle a limited caseload and focus its attention on extremely serious cases... ." Id. The administrative order also detailed the criteria that would be used for determining which defendants qualified for assignment to the habitual felony offender division.[1]
Trial courts in Florida are commonly arranged in subject matter related divisions in order to facilitate administrative efficiency and benefit from the increased expertise which specialization affords the judiciary. Article V, section 7 of the Florida Constitution provides in pertinent part that "[a]ll courts except the supreme court may sit in divisions as may be established by general law." Both article V, section 20(c)(10), Florida Constitution and section 43.30, Florida Statutes (1991), provide that "[a]ll courts except the supreme court may sit in divisions as may be established by local rule approved by the supreme court." In accordance with these clear prescriptions, the Supreme Court of Florida has held that all subject matter related divisions must be established by local rule and not administrative order. Administrative Order, Fourth Judicial Circuit (Division of Courts), 378 So.2d 286 (Fla. 1979) (holding that criminal, civil, juvenile, probate and traffic divisions are subject matter divisions); *1047 In re Report of the Comm'n on Family Courts, 588 So.2d 586 (Fla. 1991) (Family Courts I).
The differences between the procedural requirements for the establishment of local rules and administrative orders are quite significant and worthy of discussion. Administrative orders are simply entered by chief judges of the circuit courts and approval of these orders by the Supreme Court of Florida is not required. Fla.R.Jud.Admin. 2.050(b)(2). On the other hand, local rules must be approved by a majority of all county and circuit judges in the circuit. The judges must then notify the local bar within the circuit of the proposal and must permit a representative of the local bar, and any other interested persons, to be heard on the proposal. The proposal is then submitted to the Supreme Court of Florida for approval. After submission to the supreme court, the proposal is reviewed by the Supreme Court Local Rules Advisory Committee and by appropriate committees of the Florida Bar. All other interested persons are given the opportunity to provide their comments or responses to the local rules advisory committee. The supreme court may then act on the proposal on the basis of the recommendations received by the advisory and Florida bar committees or may set the matter for a public hearing. Fla.R.Jud.Admin. 2.050(e)(1). It is readily apparent from the preceding review that local rules are submitted to greater scrutiny and allow for more public input than administrative orders.
Our analysis leads us to conclude that the designation of a special court to exclusively handle habitual felony cases constitutes a subject matter related division which must be accomplished by local rule. In Garcia v. Rivkind, 639 So.2d 177 (Fla. 3d DCA 1994), the third district held that the Eleventh Judicial Circuit could not establish separate domestic violence departments within the criminal division of the county court and family division of the circuit court by administrative order. In so ruling, the court stated:
It is obvious that, however denominated, they created a specialized subject matter-related division of the trial courts which, under article V, section 7, Florida Constitution, and section 43.30, Florida Statutes, may be accomplished only by local rule, duly approved by the supreme court in accordance with Florida Rules of Judicial Administration 2.050(e)(1).
Id. at 177.
Similarly, this court, in Sapp v. Ross, No. 94-2839 (Fla. 4th DCA October 7, 1994) (unpublished order) granted a stay and issued an order to show cause regarding an administrative order of the Seventeenth Judicial Circuit which purported to create a Domestic Violence Court. The petitioners, defendants who were brought before the new division on its first day of operation, challenged the creation of the division on the basis that it had not been established through a local rule as required by the provisions set out in rule 2.050(e)(1), Florida Rules of Judicial Administration. Subsequently, the stay was lifted when the Supreme Court of Florida approved the Seventeenth Judicial Circuit's petition for approval of the administrative order as a local rule thus authorizing the establishment of a domestic violence court. See Local Rule to Establish a Domestic Violence Court in the Seventeenth Judicial Circuit, No. 84,292 (Fla. Oct. 11, 1994) (unpublished order).
In In re Report of the Commission on Family Courts, 646 So.2d 178 (Fla. 1994) (Family Courts III), the supreme court sought to clarify issues regarding the implementation and operation of family law divisions in the circuit courts which had been mandated by the legislature through chapter 90-273, section 10(3), Laws of Florida. In particular, the court discussed the confusion which had been created by the legislature in passing chapter 94-134, Laws of Florida, which made the violation of a domestic violence injunction a first-degree misdemeanor and removed the power of judges to use indirect criminal contempt to punish domestic violence injunction violators. The court stated that "[t]his legislative action effectively placed domestic violence injunction violations within the jurisdiction of county court criminal judges and removed those violations from the jurisdiction of circuit court family division judges ..." Id. at 180. The court noted that in enacting chapter 94-134, the *1048 legislature "created a number of administrative problems, given its [earlier] chapter 90-273 directive that all family issues be handled by judges assigned to family law divisions because, unquestionably domestic violence is a family law issue." Id.
Most germane to the issues at hand, however, is that the supreme court held the circuit courts' implementation of family law divisions and the assignment of all family law matters, including domestic violence, were to be controlled through either local rules or administrative orders expressly approved by that court. The court further ruled that the requirement of approval of administrative orders regarding the implementation of family court and domestic violence divisions would be an exception to rule 2.050, which ordinarily does not require approval of administrative orders. Id. at 180-82.
In Family Courts III, the supreme court specifically held the district courts' rulings in Garcia and Sapp "moot" because of the express approval in the opinion of all local rules and administrative orders concerning the assignment of judges to family law and domestic violence divisions. Thus, the court did not directly decide the issue of whether a domestic violence division of the court would ordinarily be the type of subject matter related division which must be created by administrative order. However, the supreme court's approval of local rules creating these divisions and its unusual requirement that administrative orders creating domestic violence courts be submitted to the court for approval, signifies the court's implicit endorsement of the result reached in Garcia and to a certain extent, Sapp.
The creation of the habitual felony offender division in the present case is clearly analogous to the specialized domestic violence division in Garcia. Each can be considered a subdivision of a larger body of law  domestic violence cases a subdivision of family law and habitual felony offender cases a subdivision of criminal law. We disagree with the state's argument that because the habitual felony offender division is merely a subdivision of a duly created division, the local rule procedure is therefore unnecessary. As the court stated in Garcia, "however denominated, they create a specialized subject matter related division of the trial courts." Garcia, 639 So.2d at 177. Here, the Fifteenth Judicial Circuit created a specialized subject matter related division which provided the exclusive judicial forum for the processing of habitual felony offenders which met the criteria of the administrative order. We hold that the habitual felony offender division should have been established by local rule rather than by administrative order.[2]
Next, appellant contends that the habitual felony offender division has a disparate adverse impact on minority defendants and that the trial court should have conducted an evidentiary hearing in regard to his racial discrimination claim. To support his argument below, appellant presented the trial court with a compilation of statistical data showing a significant and growing disparity in the proportion and percentage of black and hispanic defendants assigned to the habitual felony offender division compared to that of white defendants. For example, the data compiled by the public defender's office showed that in the time preceding the creation of the habitual felony offender division the average racial composition of all felony divisions was 55% black, 42% white, and 3% hispanic. In the first three and a half months of the habitual felony offender division's creation, the racial composition in that division was 71.6% black, 25.8% white, and 2.6% hispanic. Within six months of the court's inception, the racial composition changed to 77.9% black, 18.5% white, and 3.6% hispanic. The clerk of court's office revealed similar statistics.
In its order denying appellant's motion for evidentiary hearing, the trial court recognized that there was "a substantial and alarming disparity" between the number of white defendants and minority defendants assigned to the habitual felony offender division. However, the trial court found that *1049 statistics alone could not make out a prima facie case of purposeful discrimination and that appellant was not entitled to an evidentiary hearing on his discrimination claim. We hold that the trial court did not err in failing to hold an evidentiary hearing on the basis of the facts presented and claims made. In order to prevail under the equal protection clause, a defendant must allege and prove the existence of purposeful discrimination on the part of the decisionmakers in his case. McCleskey v. Kemp, 481 U.S. 279, 292-293, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262, 278 (1987). In McCleskey, the defendant claimed that the imposition of Georgia's death penalty was administered in a racially discriminatory manner in violation of the Fourteenth Amendment to the United States Constitution. McCleskey relied on a statistical study showing that defendants charged with killing white persons received the death penalty in 11% of the cases, but defendants charged with killing blacks received the death penalty in only 1% of the cases. The study concluded that defendants charged with killing white victims were 4.3 times as likely to receive the death penalty as defendants charged with killing black victims. Black defendants were 1.1 times as likely to receive the death penalty as other defendants. Id. at 287, 107 S.Ct. at 1764. McCleskey, a black defendant charged with killing a white victim, argued that the study demonstrated that he was discriminated against because of his race and the race of the victim.
The Court held that McCleskey "must prove that the decisionmakers in his case acted with discriminatory purpose." McCleskey, 481 U.S. at 292, 107 S.Ct. at 1767 (emphasis in original). In doing so, the court rejected McCleskey's claim that his statistical studies could provide an inference of purposeful discrimination. The Court reiterated that "a defendant who alleges an equal protection violation has the burden of proving `the existence of purposeful discrimination' [citation omitted]"... and "that the decisionmakers in his case acted with discriminatory purpose." Id.
The holding in McCleskey was adopted by the Supreme Court of Florida in Foster v. State, 614 So.2d 455 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 398, 126 L.Ed.2d 346 (1993). In Foster, the defendant offered a statistical study to show a numerical disparity in the use of the death penalty in Florida as applied to white and minority defendants. The supreme court first noted that the defendant offered nothing to suggest that the state attorney's office acted with purposeful discrimination in seeking the death penalty in his case. The court found that the study standing alone was insufficient to support an inference that the decisionmakers acted with purposeful discrimination. Given that fact, the supreme court held that the trial court was not required to hold an evidentiary hearing on Foster's equal protection claim. Id. at 464.
In the present case, appellant has not alleged that the decision to create the habitual felony offender division was based upon the impermissible standard of race or that his assignment to that division was so based. Therefore, even if the trial court had allowed an evidentiary hearing, his allegations would not support a finding of a denial of equal protection. McCleskey; Foster. Simply put, in order to prevail on his equal protection claim, appellant must prove that the decisionmakers in his case acted with discriminatory purpose in creating the habitual felony offender division or in assigning him to it. See Dawson v. State, 636 So.2d 858 (Fla. 1st DCA 1994); Pittman v. State, 633 So.2d 1125 (Fla. 1st DCA), rev. denied, 642 So.2d 747 (Fla. 1994). Appellant does not offer such proof nor make such allegations. Instead, in his motion to declare the habitual offender court unlawful, he states:
[T]he decisions to create the Habitual Offender Court, and the subjectively created qualifying criteria, were made solely by white decisionmakers: the judge assigned to preside over the Habitual Offender Court is white; all the assistant state attorney's who make the initial decision whether a defendant qualifies for Habitual Offender Court are white; and the process apparently allows for discretionary assignment decisions made mostly by white assistant state attorneys.
*1050 We find that these assertions do not sufficiently allege that the decisionmakers in appellant's case acted with discriminatory purpose.
The Court in McCleskey has indicated that statistical evidence of disparate racial impact can serve as proof of discriminatory intent but only in very limited circumstances. For instance, in Title VII employment cases, statistical evidence showing a consistent pattern of bias against a certain racial group may support an inference that the disparate impact was purposeful. Because the challenged actions may be attributed to a limited number of decisionmakers (e.g., one corporation or personnel department), the "unexplained statistical discrepancy can be said to indicate a consistent policy of the decisionmaker." Id. 481 U.S. at 295, n. 15, 107 S.Ct. at 1768 n. 15. On the other hand, in cases where the adverse disparate impact reflects the discretionary actions of literally scores of prior unrelated decisionmakers, statistical evidence can have little or no probative value in showing the discriminatory intent of the challenged decisionmaker.
Appellant's equal protection attack on the Fifteenth Judicial Circuit's habitual offender division represents just the type of challenge which must necessarily encompass the actions of previous, often unrelated decisionmakers. In these instances, statistical proof of disparate impact alone will not sustain the petitioner's burden of proving purposeful discriminatory intent on the part of the decisionmaker in his case. For example, before a defendant can meet the criteria for the habitual felony offender division, he must have at least three prior qualifying felony convictions. Those previous convictions necessarily involved the actions of a myriad of police agencies in initially arresting the defendant, the actions of various prosecutor's (and perhaps grand jurors) in charging the defendant, and the actions of many individual petit jurors in convicting the defendant. In view of the varied involvement of other decisionmakers in establishing the underlying factors which allow a defendant to meet the criteria of the habitual felony offender division, appellant's statistical study standing alone sheds little light on any discriminatory intent of the chief judge of the Fifteenth Judicial Circuit in creating the special division of court. See McCleskey; Foster.
Appellant next argues that he was convicted in a de facto racially segregated courtroom which would violate the due process clauses of the state and federal constitutions regardless of a showing of purposeful discrimination. See Brown v. Board of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (holding that separate facilities are inherently unequal). We find this argument unpersuasive. Appellant did not show that the court was segregated. A defendant is assigned to the felony offender division if he meets the criteria set forth in the administrative order creating the division. That criteria was not based on race. All defendants meeting the criteria were assigned to that division regardless of race. Although the statistics revealed that more blacks were assigned to the habitual felony offender division than whites, appellant failed to show or allege that all defendants assigned to the division were black or that those blacks assigned to the division were assigned there because of race.
We must next consider the remedy which should be afforded to appellant. We reject appellant's argument that he is entitled to a new trial. The determination of whether one should be sentenced as an habitual felony offender is essentially independent of the determination of guilt on the underlying substantive charge. Even though the division was not created in compliance with the Rules of Judicial Administration, the circuit judge assigned there possessed the power to preside over appellant's case. See Willie v. State, 600 So.2d 479 (Fla. 1st DCA 1992). Therefore, appellant cannot seriously challenge the validity of his conviction in the habitual felony offender division on the sole basis that the court was improperly created by administrative order. However, because the division was improperly created as a special court to facilitate the sentencing of defendants convicted therein, we believe that allowing appellant to be resentenced in a properly formed division of the circuit court affords a most adequate remedy in this case.
*1051 We have considered the other issues raised by appellant in this appeal and find that they lack merit. Accordingly, we affirm the conviction, but vacate the sentence and remand for resentencing before a different trial judge.
POLEN and FARMER, JJ., concur.
NOTES
[1] It stated:

1. All cases pending on or filed after July 1st, 1991, in which at least one of the defendants meets all of the following criteria shall be assigned to division "V" in the criminal division of the circuit court.
a) Defendant is charged with a felony of the second degree or higher ...
(b) Defendant has previously been convicted on separate dates of three or more felonies ...
(c) The felony, with which defendant is presently charged, is alleged to have been committed within five years [of the] ... last prior felony conviction ...
(d) Defendant has previously been sentenced to a term of one year ... or more, in the Department of Corrections.
[2] We note that both parties have informed this court that the Fifteenth Judicial Circuit, on its own accord, has already dismantled the division.