WARNER, J.
This case presents a very rare incidence where ineffective assistance of counsel is apparent on the face of the record. Trial counsel failed to move to sever two distinct counts of a criminal information until after the jury was informed of both crimes. Although the trial court tried to salvage a bad situation, the damage was irreparable, as counsel continued to perform ineffectively. We are compelled to reverse.
The state filed an information against appellant in St. Lucie County, Florida, alleging four counts: count I for sexual battery by digital penetration of A.W.G., a child under 12 by a perpetrator 18 or older, for incidents that occurred between November 19, 1997, and November 18, 1998; count II for sexual battery by oral penetration of or union with A.W.G., a child under 12 by a perpetrator 18 or older, during the same time period; count III for lewd or lascivious molestation of D.A.R., a victim 12 to 16, for incidents that occurred between December 1, 2003, and December 31, 2003; and, count IV for lewd or lascivious molestation of D.A.R., a victim 12 to 16, for incidents that occurred between August 29, 2005, and May 4, 2007.
At jury selection on February 8, 2010, the trial judge read all four counts to potential jurors. The jury was chosen and sworn, and the court asked if the attorneys had any motions, to which defense counsel Stephen Fromang responded, “No, I’m going to go back and ... take a good hard look at it now.” The next morning, Mr. Fromang filed a Motion to Sever Counts III and IV, stating that he thought the state had nolle prossed them, and because of this, he was not ready to proceed on those counts and had not conducted discovery.
The court expressed its irritation with Mr. Fromang and admonished him for filing the motion so late. Fromang responded, “I didn’t — I just was telling you, Judge, it didn’t coalesce, but when it did, I — I—I presented it to the Court.” Fromang stated that he had based his assumption that the state had nolle prossed the counts on the fact that D.A.R. had recanted her story in a letter and said she didn’t want to be involved in the trial. The state maintained, however, that D.A.R. had never recanted and that Mr. Fromang was “aware that she’s always been involved in the picture.” Mr. Fromang admitted that he never took her deposition, nor had he ever received a nolle prosse from the state.
The prosecutor suggested that Mr. Fro-mang ask for a mistrial on those two counts and waive jeopardy so that the court could sever counts III and IV. Mr. Fromang immediately agreed. The court then asked the prosecutor how she wished to proceed, and she responded that she believed that counts I and II were interre *651 lated to counts III and IV. The court then suggested that the Williams[1] Rule might provide a basis for allowing the charges in counts III and IV to be inserted in counts I and II. The prosecutor had not pursued admission of the testimony of victim D.A.R. through the Williams Rule, because the counts were never severed. The court discussed with the prosecutor the similarities between the crimes to determine whether this would cure the prejudice to the state if severance were granted.
The judge then began to ask Mr. Fro-mang if he was making a motion to sever, but then stated that the court “can’t have anything to do with your decision.” Mr. Fromang requested a mistrial, but the court prompted Mr. Fromang on waiving double jeopardy on counts III and IV, and Mr. Fromang immediately moved for the waiver. The court then asked Mr. Fro-mang if he would waive the ten-day notice requirement for Williams Rule evidence, and Mr. Fromang readily agreed to do so. See § 90.404(2)(d)l., Florida Statutes. Turning to the prosecutor, the court then discussed the theories under which the second victim’s testimony would be admitted, suggesting that it could be admissible to show the chronology of why A.W.G. came forward with her accusations, which occurred after she found out that D.A.R., her sister, had been molested by appellant.
Mr. Fromang insisted that D.A.R. would, if put on the stand, recant her previous story and state that Appellant had never touched her. The judge asked Mr. Fromang why he would wish to sever if he believed that D.A.R. would testify in favor of appellant, and he responded “it’s an advantage to me — I’m not saying it’s not, but — but when I saw this, uh, where the Rule says we have the option to sever if we can, and I admit it’s not timely, I agree with that.” The judge expressed his concern that he had already read all four counts to the jury, so the judge and the attorneys discussed the appropriate way to inform the jury about the change, since, as the court said, “it’s pretty obvious that they’re ... aware of four counts.” The court believed, however, that if D.A.R.’s testimony was admissible as Williams Rule evidence, this would cure any prejudice of informing the jury of the D.A.R. charges against the defendant. The court decided not to mention the other charges to the jury again.
A.W.G. testified that the first incident with appellant occurred when A.W.G. was 11, when appellant touched her legs and inserted a finger into her vagina. Following this incident, appellant would offer to take A.W.G. home from baseball practices and games, but appellant would stop at his house before taking her home. A.W.G. claimed this was when the sexual encounters occurred, beginning with a hug, but not “a regular hug,” and then oral sex. A.W.G. did not say anything to anybody about the incidents but remembers it happening about 50 times. On cross-examination, Mr. Fromang, in attacking the credibility of A.W.G.’s memory, suggested that “it could have been 200” incidents, and A.W.G. agreed that it could have been. A.W.G. stated that the encounters stopped when she was 16 or 17. Mr. Fromang did not object to these statements, which referred to incidents that occurred outside the November 1997 to November 1998 timeframe alleged in the information. A.W.G. did not report the incidents with appellant until June of 2007, when she did so “out of concern” for her sisters, specifically D.A.R., who had told her of her own encounters with defendant.
Immediately prior to the proffer of D.A.R.’s testimony, the state presented *652 several cases in support of admissibility of the Williams Rule evidence. Mr. Fro-mang stated that he had no contrary case law, since “that’s ... black letter stuff.” Following D.A.R.’s statements, Mr. Fro-mang conducted a cross-examination and questioned her prior inconsistent statements recanting this testimony. Mr. Fro-mang then stated that “we have some people out there that would come in and contradict that.” The court ruled that such testimony would “just go[] to the weight of the evidence ... [rjather than its admissibility.” Mr. Fromang responded, “Bingo. I know.” Mr. Fromang did not object to the court’s finding that D.A.R.’s testimony was admissible. The court instructed the jury at that point that they would be hearing evidence of other acts that should be considered only “for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge or the absence of mistake or accident on the part of the Defendant.”
During the proffered testimony and D.A.R.’s testimony to the jury, D.A.R. stated that when she was thirteen, appellant asked for a hug and proceeded to touch D.A.R.’s buttocks and breasts until D.A.R. told him to stop and began crying. Then in 2006, when D.A.R. was sixteen years old and living with appellant, D.A.R. was lying in bed, when D.A.R. felt appellant’s hand sliding up under the covers, but D.A.R. stopped him. D.A.R. recalled feeling appellant’s face close to her neck during hugs, and feeling his hands on her thighs. In May of 2007, D.A.R. moved out of appellant’s house and in with A.W.G. Not long after that, D.A.R. told A.W.G. about the incidents. Mr. Fromang questioned the letter D.A.R. wrote recanting her statement on cross, and D.A.R. stated that she wrote the letter because at that time she was dealing with her mother in jail and did not want to deal with the trial too.
After the presentation of evidence, the court below instructed the jury only on counts I and II. The jury found appellant guilty as charged on both counts, and the court sentenced him to concurrent sentences of life in prison without the possibility of parole.
Appellant argues on appeal that his counsel, Mr. Fromang, provided completely ineffective assistance of counsel in multiple respects. In general, a claim of ineffective assistance of counsel cannot be raised for the first time on appeal, but rather such a claim is properly made in a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure. Odeh v. State, — So.3d -, -, 2011 WL 2694434 (Fla. 4th DCA 2011). However, there is an exception in which “an appellate court may review an ineffective assistance of counsel claim on direct appeal when the claimed ineffectiveness is apparent on the face of the record.” Kidd v. State, 978 So.2d 868, 869 (Fla. 4th DCA 2008). This exception is rarely applicable, Boyd v. State, 45 So.3d 557, 560 (Fla. 4th DCA 2010), because “[s]uch claims ordinarily turn on issues of fact and both sides are entitled to present relevant evidence to the trial court to resolve those issues.” Gordon v. State, 469 So.2d 795, 798 (Fla. 4th DCA 1985) (Anstead, J., concurring specially). “ ‘[AJppellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable.’ ” Larry v. State, 61 So.3d 1205, 1207 (Fla. 5th DCA 2011) (quoting Corzo v. State, 806 So.2d 642, 645 (Fla. 2d DCA 2002)). The appellate court must conduct a de novo review of the record to determine if a defendant’s claim meets the deficiency and prejudice prongs of Strickland, *653 discussed below. See Gordon, 469 So.2d at 797-98.
In accordance with the Supreme Court’s holding in Strickland v. Washington, there are two components to a successful ineffective assistance of counsel claim. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “First, the defendant must show that counsel’s performance was deficient. ... Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. Here, we conclude that both are shown.
It is inconceivable to us how Mr. Fromang could have participated in jury selection, listened to the judge read four charges to the jury, questioned the jury, and the next day moved to sever two of the counts that the jury already heard. His performance is so clearly deficient that we hardly need to say much else. The jury was irreparably tainted by hearing that appellant was charged with two additional crimes. Counsel compounded this error by abandoning his client’s rights in agreeing to waive the ten-day requirement of the statute for the admission of Williams Rule evidence, something he appeared to do to mollify the judge and not to protect his client’s interests.
The errors continued when D.A.R. testified in the Williams Rule proceeding. He did not object that the trial court refused to permit him to introduce evidence on the issue and even agreed to the court’s erroneous statement that the other witnesses would go to the weight, not the admissibility, of the Williams Rule evidence. Because the trial court must determine that clear and convincing evidence supports the claim that the defendant did commit a collateral crime whose admission is sought, see Alsfield v. State, 22 So.3d 619, 620-21 (Fla. 4th DCA 2009), a defendant has the right to present evidence on the issue. To show the collateral crimes evidence is material, “the State must prove by clear and convincing evidence that the collateral act was actually committed by the defendant,” and when an alleged victim to this other offense has told inconsistent stories, this may be insufficient to meet this standard. Id. at 621 (citing Audano v. State, 641 So.2d 1356, 1358-59 (Fla. 2d DCA 1994)). In this case, Mr. Fromang sought to call witnesses to testify that D.A.R. changed her story. The trial court refused to hear the witnesses and Mr. Fromang never objected. Had he done so, the court might have reconsidered and allowed him to present witnesses. That may have persuaded the trial court that D.A.R.’s evidence was unreliable and thus inadmissible under the Williams Rule standard.
Finally, Mr. Fromang never objected when the judge left a position of neutrality in an attempt to salvage the trial from the mess created by Mr. Fromang’s belated motion to sever. The court made suggestions to the state on theories to admit the Williams Rule evidence so that the state would not be prejudiced by the motion to sever. It even obtained Mr. Fromang’s waiver of his client’s right to notice. We understand that the court was trying to make the best of a bad situation and to avoid a double jeopardy problem, but in this case the situation appeared irreparable. The need for a mistrial would have been the fault of the defendant, thus avoiding the double jeopardy bar. State v. Dixon, 478 So.2d 473, 474-75 (Fla. 2d DCA 1985).
In viewing the second prong of the Strickland test, we also find that the ineffective assistance was so serious as to have affected the outcome. This was a case *654 with no evidence other than the testimony of the two victims, one of whom may have recanted. The incidents were ten years apart, and proper objections may have prevented D.A.R. from testifying as a Williams Rule witness. See Alsfield. We can conceive of no tactical strategy which would justify the conduct of counsel in this case. There being a reasonable probability that the outcome would have been different had counsel provided effective representation, we must reverse.
We caution that this result is limited by the specific facts of this case and does not show a greater leniency of this court to find ineffective assistance on the face of the record. As we said in the beginning, this case is a rare exception to the general rule.
DAMOORGIAN and GERBER, JJ., concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).