# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-2811

_____

CHRISTOPHER J. MARS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Walton County.
Kelvin C. Wells, Judge.

August 3, 2018

B.L. THOMAS, C.J.

Appellant was charged with three counts of sexual battery by an adult on a victim more than twelve years of age but less than eighteen years of age, without their consent, and without physical force and violence likely to cause serious personal injury under section 794.011(5)(a), Florida Statutes. Appellant was also convicted of false imprisonment under section 787.02, Florida Statutes. At trial, based on testimony of the victim and other evidence, including DNA evidence corroborating the victim's testimony, Appellant was convicted. At sentencing, after the trial court received a victim-impact statement from the victim and his mother, Appellant was sentenced to concurrent terms of life imprisonment on the sexual battery counts and five years' imprisonment for false imprisonment.

Appellant initially raised four issues on appeal, but withdrew one issue after supplemental records demonstrated the trial court again offered to provide counsel to appellant just before trial, as required under Florida Rule of Criminal Procedure 3.111(d)(5), after the trial court initially determined Appellant knowingly waived his right to counsel and exercised the right of self-representation. *See Faretta v. California,* 422 U.S. 806 (1975); *Knight v. State,* 770 So. 2d 663 (Fla. 2000).

In his remaining issues on appeal, Appellant argues that the trial court reversibly erred in failing to *sua sponte* conduct a formal competency hearing and in deciding Appellant could waive his right to counsel. In addition, he argues that it can be determined on the face of the record that standby counsel was ineffective by refusing to share information with Appellant.

*Facts*

Appellant candidly concedes that he was "a difficult defendant to have in court"; that he was "not cooperative" in communicating with mental-health experts directed to interview him; and that he was "not cooperative" with his counsel before discharging his counsel. The record supports Appellant's concessions.

At a pretrial hearing, appointed defense counsel moved for a continuance and asked the court to order a competency evaluation; the court granted the motion and issued an order appointing an expert to evaluate Appellant. At another hearing, defense counsel informed the court that because Appellant refused to talk to the evaluator, there had been no determination of competency, although the evaluator said Appellant "demonstrated some knowledge of the adversarial nature of [the] proceedings." The State argued that since there was no finding of incompetency, Appellant was presumed to be competent and the proceedings could go on; the trial court agreed.

Appellant asked to address the court, and asserted that he preferred to be evaluated by someone who had been in the military, but the court notified him that he could not choose who evaluated him. Appellant then asked if he could have a different

2

public defender, and the court proceeded to conduct a hearing under *Nelson v. State,* 274 So. 2d 256 (Fla. 4th DCA 1973).

The court notified Appellant that it would not appoint new counsel unless he could demonstrate current counsel was deficient, which Appellant attempted to do: Appellant claimed his appointed counsel had not obtained the telephone record of the victim's mother, but both defense counsel and the State indicated that there was no such record; Appellant claimed that defense counsel failed to get a recording of a phone call between defense counsel and a potential witness, Kermit Wright, but defense counsel indicated that the call was not recorded; and Appellant stated that defense counsel would not give him a copy of his notes from the phone conversation, but counsel said he told Appellant the nature of the conversation.

The court found that counsel was not deficient, and informed Appellant that if he chose to discharge his appointed counsel, he could either hire private counsel or represent himself, which the court strongly advised Appellant not to do. Appellant was insistent, claiming that he planned to retain counsel, and defense counsel stated that this assertion had been pending for "six court dates." The trial court then allowed Appellant additional time to retain counsel.

At the later date, appointed counsel stated he had spent time preparing for trial, but Appellant refused to talk to him after ten minutes. The trial court then stated that Appellant's case had been delayed nine times and trial was going to proceed. When Appellant claimed it was difficult retaining an attorney while incarcerated, the court advised Appellant that it was not going to delay the trial further. The court warned Appellant that if he continued to refuse to speak with counsel, and fired his appointed counsel, it was likely Appellant would be representing himself, unless there was some evidence appointed counsel was providing deficient representation. When Appellant claimed appointed counsel had not taken depositions, defense counsel stated he had in fact taken nine depositions and that Appellant refused to discuss case preparation with him. The court determined that defense counsel was not deficient; rather, Appellant was obstinately refusing to cooperate with appointed counsel.

3

Appellant then stated he wanted to fire his appointed counsel. He answered questions logically and adequately, and he clearly expressed his intent to discharge counsel. When the trial court began the *Faretta** inquiry, Appellant refused to answer the relevant questions. The trial court found Appellant's silence to constitute affirmative answers, based on the court's conclusion that Appellant was intentionally refusing to communicate. The trial court again warned Appellant of the consequences and disadvantages of self-representation. The court directed appointed counsel to serve as standby counsel; appointed counsel agreed, and promised to share the deposition transcripts with Appellant.

When trial began, the trial court noted that Appellant was dressed in appropriate attire rather than jail clothing and inquired of the corrections officer who escorted Appellant to court. The officer stated he had spoken to Appellant, who agreed to change clothes, but he did not have a "full out" conversation with Appellant. The officer stated Appellant was coherent and seemed to understand the proceedings.

The court addressed standby counsel, who indicated he was prepared to proceed if called upon. The court again advised Appellant that, after the *Nelson* and *Faretta* inquiries, he was being permitted to represent himself, but that he could request standby counsel to take over at any time. The court reminded Appellant of the benefits of counsel and the disadvantages of self-representation. Appellant continued to be non-responsive throughout. The court asked standby counsel whether Appellant had been able to communicate with him about the case, and counsel indicated that he had.

During jury selection, Appellant did not ask any questions or exercise any strikes. He would not answer when asked if he had any objections to the State's strikes or to the swearing of the jury panel. He was silent during the State's opening and did not respond when asked if he wanted to make an opening statement.

---

*Faretta v. California*, 422 U.S. 806 (1975).

4

The sexual-battery charges were based on Appellant's sexual acts with a 17-year-old special-education student. The victim described the acts in detail, and testified that Appellant tried to convince him to take a shower before leaving Appellant's home, but the victim convinced Appellant that he wanted to take a shower at his own home. As soon as he could, the victim informed his mother, who immediately called police, and forensic and medical examinations were arranged with the Child Advocacy Center.

After direct examination, the trial court asked Appellant, representing himself, whether he had any questions for the victim on cross-examination. When stand-by counsel approached the bench, Appellant demanded that stand-by counsel disengage from any activity in the trial, stating, "I'm representing myself. He [counsel] ain't got nothing to do with it now."

Stand-by counsel then informed the court that Appellant had asked for counsel's notes, which he declined to provide to Appellant, but he did offer to provide all the discovery he had received. The trial court declined to order counsel to provide his notes, informing Appellant that the notes were work product. After receiving the discovery, Appellant asked if he could have additional time to listen to tapes. The trial court informed Appellant he could not, as counsel had attempted to meet with Appellant before being discharged, and Appellant refused to cooperate with counsel. The trial court stated that he was not going to allow Appellant to further delay the trial after it had begun when Appellant had refused to speak to his attorney, before his discharge, who had set aside an entire afternoon to meet with Appellant. The trial court allowed Appellant time during a lunch recess to review the discovery, but noted that he had warned Appellant he would not be receiving any "special treatment."

When Appellant asked if he could recall the victim, rather than cross-examine the victim, in order to hear all the other evidence the State would present, the trial court informed Appellant that he could call witnesses in his own case and ask

them questions, if the questions were relevant and permissible under the rules of evidence.

Dr. Lynn Keefe with the Child Advocacy Center who examined the victim testified that he had a gene abnormality called "Fragile X Syndrome," which was associated with certain symptoms and could be associated with intellectual disabilities. The doctor took swabs from the victim for DNA analysis which were provided to law enforcement.

Appellant responded "I sure do," when the trial court asked Appellant if he had any questions on cross-examination. Appellant questioned Dr. Keefe regarding why Appellant's DNA might not be found in part of the victim's body or in another manner; Dr. Keefe testified that Appellant's DNA could be found in other bodily fluids and his fingernails. Appellant also attempted to question Dr. Keefe regarding an allegation that the victim had previously been molested by his father, but the trial court sustained this objection. On redirect examination, Dr. Keefe testified that Appellant's DNA could have been present in the victim's saliva. On re-cross examination, Appellant asked if this would include DNA from spitting out his tobacco juice, and Dr. Keefe agreed that any of Appellant's saliva could include his DNA.

Detective Phillip Austin testified that the victim identified Appellant from a photographic lineup. When Detective Austin interviewed Appellant, he confirmed he knew the victim, who had been in Appellant's home. The detective took a buccal swab from Appellant. Appellant cross examined Detective Austin, noting that the victim had stated something occurred during his police interview, which the victim had testified at trial did not occur. Appellant attempted to argue with the detective regarding Appellant's use of crutches, but the trial court informed him that he could testify on his own behalf in this regard.

Kelly Shay, an analyst with the Florida Department of Law Enforcement, testified that she tested the samples from the victim and Appellant and that samples of the victim's bodily fluids contained Appellant's DNA. On cross-examination, Appellant asked Shay one question, whether she was testing

6

specifically for saliva.  Shay indicated there was not enough of a sample for her to test each of the swabs for saliva; she was testing for semen and blood.

After the State rested, the trial court discussed with Appellant his right to testify and present a case.  Appellant then indicated he would like to have standby counsel represent him.  After conferring with counsel, Appellant did not testify and did not present any other evidence.  During closing, counsel argued that there was reasonable doubt regarding the DNA evidence, as it could have come from the victim's contact with surfaces in Appellant's home, and there was reasonable doubt about the victim's credibility.

The trial court instructed the jury without objection.  The jury found Appellant guilty on all four counts.

*Analysis*

*Competency to Proceed*

Appellant first asserts that the trial court erred when it declined to conduct a competency proceeding based on Appellant's behavior when he refused to cooperate with a mental-health evaluation and refused to answer some questions during the *Faretta* hearing.  The State asserts that the trial court did conduct a competency hearing, received the expert's report, and found that Appellant could proceed and was only trying to obstruct the trial.  The State relies on the trial court's questioning during the *Faretta* hearing and on Appellant's eventual self-representation, during which he displayed competence and intelligently questioned witnesses and communicated with the court.

A trial court's decisions regarding a defendant's competency, including the question of whether a formal competency hearing should have been held, are reviewed for abuse of discretion.  *See Peede v. State*, 955 So. 2d 480 (Fla. 2007) (applying abuse of discretion standard to a competency determination); *Laster v. State*, 212 So. 3d 392 (Fla. 4th DCA 2017) (finding that court's failure to *sua sponte* conduct a competency hearing was not an

7

abuse of discretion). "[A] trial court's determination of competency supported by competent, substantial evidence will not be disturbed on appeal." *Gore v. State*, 24 So. 3d 1, 10 (Fla. 2009).

Florida Rule of Criminal Procedure 3.210(b) provides in relevant part that a trial court has a duty to conduct a competency proceeding when it has "reasonable ground[s] to believe that the defendant is not mentally competent to proceed[.]" Competency to stand trial means the defendant "'has sufficient present ability to consult with counsel with a reasonable degree of rational understanding'" and "'has a rational as well as a factual understanding of the pending . . . proceedings.'" *Gore, 24 So. 3d at* 9 (quoting *Alston v. State,* 894 So. 2d 46, 54 (Fla. 2004)).

Here, the trial court did not abuse its discretion. Defense counsel informed the court that, while the expert was unable to conduct a complete examination, it appeared that Appellant had an ability to understand the adversarial nature of the proceedings. The evaluator further noted that Appellant did not have a mental health history and that Appellant might be refusing to be evaluated to "postpone going to trial and avoid the potential consequences of his alleged behavior." As to Appellant's silence during the *Faretta* inquiry and the first part of the trial, the court found that this behavior reflected Appellant's obstinacy, rather than an inability to understand the proceedings. We note furthermore that Appellant only became silent *after* the court ruled that there were no grounds to discharge Appellant's counsel. Later, Appellant meaningfully and intelligently participated in his defense.

The trial court also communicated with Appellant the day of the trial, and questioned the deputy who escorted Appellant. The deputy stated that Appellant seemed to be coherent and understand events, although he did not have an extensive conversation with Appellant. In addition, Appellant's standby counsel confirmed that Appellant could communicate adequately with counsel during trial. Thus, we do not find the trial court committed reversible error by not conducting a competency hearing.

8

*Self-Representation*

Appellant argues that the trial court erred in allowing Appellant to represent himself. He acknowledges that the trial court conducted a thorough *Faretta* hearing, but asserts that when he refused to answer questions, the trial court was obligated to require counsel to continue representing Appellant, conduct a competency hearing, and delay proceedings until the court could ensure Appellant was knowingly and intelligently waiving his right to appointed counsel.

The State asserts the following competent, substantial evidence to support the finding that Appellant knowingly and intelligently waived his right to counsel: 1) Appellant's comment "I'll represent myself then" directly preceding his silence; 2) his repeated attempts to hire a lawyer other than the assistant public defender; 3) his claims of dissatisfaction with counsel; 4) his refusal to be evaluated; and 5) the trial court's direct observations of Appellant's behavior. The State also relies on the fact that Appellant changed his clothes before trial, and the testimony of Deputy McCormick and standby counsel further support the court's determination.

We apply a deferential standard of review when a party challenges a trial court's ruling that the party waived his or her right to appointed counsel and properly exercised their right of self-representation in a criminal case. "When reviewing a trial court's handling of a request for self-representation, the standard of review is abuse of discretion." *Aguirre-Jarquin v. State*, 9 So. 3d 593, 602 (Fla. 2009). This is both appropriate and logical, as "the court's ruling [regarding a defendant's waiver of counsel] turns primarily on an assessment of demeanor and credibility, [and therefore] its decision is entitled to great weight and will be affirmed on review if supported by competent substantial evidence in the record." *Potts v. State*, 718 So. 2d 757, 759 (Fla. 1998).

Trial courts face a challenging task when attempting to communicate with criminal defendants who express their refusal to accept appointed counsel, yet refuse to properly answer

9

questions to allow the court to appropriately evaluate the context of the defendant's demands to represent himself or herself. The United States Court of Appeals for the Eleventh Circuit has observed that "an unwilling defendant can foil a [trial] court's best efforts to engage in dialogue, thereby preventing the court from eliciting clear information regarding the defendant's understanding of the dangers of proceeding pro se." *United States v. Garey*, 540 F.3d 1253, 1267 (11th Cir. 2008). Nonetheless, the trial court is permitted, in its discretion, to interpret the defendant's behavior as a knowing and voluntary waiver of counsel, even where the defendant does not affirmatively request self-representation. *Id.*

The Florida Supreme Court has also recognized that a trial court has the authority and discretion to conclude a defendant has waived his right to counsel, where the defendant is uncooperative, in a capital case:

> Muehleman refused to answer many of the questions posed by the court, but it was apparent on the record, from his pro se verbal and written appearances before the court, that he was articulate, understood the charges and possible penalty, knew various aspects of the law pertaining to the penalty phase, and knew that he had both a right to appointed counsel and a right to represent himself. Muehleman was also advised that a lawyer would possess experience and knowledge necessary in the case and that Muehleman would be at a great disadvantage if he represented himself.

*Muehleman v. State*, 3 So. 3d 1149, 1158 (Fla. 2009). Here, as in *Muehleman* and *Garey*, the trial court properly concluded from Appellant's demeanor and behavior that he understood the rights he was relinquishing by proceeding pro se and that "'his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). We thus find no abuse of discretion in the trial court's decision on this issue.

Appellant engaged with the court and discussed issues relating to the quality of his representation and the evidence in

the case just before the *Faretta* inquiry. The competency expert indicated that Appellant generally understood the proceedings, and appointed counsel stated that Appellant could communicate with counsel about the case. We further recognize that Appellant's reticence to speak began when the court ruled against his request for new counsel. Therefore, we hold that competent and substantial evidence supports the trial court's ruling to allow Appellant to proceed pro se with standby counsel. *See Potts*, 718 So. 2d at 759.

*Ineffective Assistance Claim*

Appellant asserts that counsel provided ineffective assistance, apparent on the face of the record, by counsel's failure to disclose discovery, after Appellant dismissed counsel. Appellant argued that had counsel timely provided him with the materials, Appellant could have better prepared for cross-examination and may have decided to request the reappointment of counsel at an earlier stage. He asserts that counsel's deficient performance and the prejudice to Appellant are apparent on the face of the record.

The State asserts that this argument fails, because Appellant waived any argument regarding the effectiveness of counsel by originally proceeding pro se and, further, he invited error by not raising any issue regarding being unprepared until after trial began. Moreover, the State notes, counsel provided Appellant with some but not all of the materials before trial. Additionally, after the State rested, Appellant chose to have standby counsel take over his case, and counsel made a strategic choice not to further question witnesses or present additional evidence after review of the discovery material. Finally, the State argues that because it is unclear how the requested discovery material, including physical evidence, would have undermined the State's case, Appellant cannot establish how he was prejudiced on the face of the record.

Claims of ineffective assistance of trial counsel generally cannot be reviewed on direct appeal, as "[t]he trial court is the more appropriate forum to present such claims where evidence might be necessary to explain why certain actions were taken or

11

omitted by counsel." *McKinney v. State*, 579 So. 2d 80, 82 (Fla. 1991). As the Second District noted in *Corzo v. State*:

> The general rule is that a claim of ineffective assistance of counsel may not be raised on direct appeal. On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable.

806 So. 2d 642, 645 (Fla. 2d DCA 2002) (citation omitted).

We decline to hold that any prejudice to Appellant is indisputable. In fact, we would be hard pressed to find prejudice here, even were we to find counsel's conduct deficient, given the DNA evidence and other overwhelming evidence of guilt. There must be a reasonable probability that, had counsel provided appropriate representation, the outcome would have been different. *Hills v. State*, 78 So. 3d 648, 654 (Fla. 4th DCA 2012) (holding defense counsel provided ineffective assistance of trial counsel on the face of the record, where counsel failed to move to sever counts alleging additional sexual assaults until after jury selection and failed to properly contest similar-fact evidence, and prejudice found where evidence not conclusive). As to Appellant's claim that he was prevented from preparing for cross-examination, it is notable that Appellant *did* conduct cross-examination of all witnesses other than the victim after having an opportunity (albeit only during lunch) to review the discovery materials. During his cross-examination of witnesses, Appellant was able to question whether his DNA could have been present on the victim's body for reasons other than sexual contact, and was able to point out that the victim's testimony about the sexual contact did not precisely mirror what was described in the police report. Appellant does not specify what other attacks he could have made on these witnesses' testimony if more adequately prepared.

As to the victim, it is true that Appellant did not have access to the discovery materials at the time he opted to forego cross-examination and instead planned to call the victim in his own

case after hearing all of the State's testimony. However, he points to nothing in the discovery materials that he could have used to undermine the victim's credibility, especially considering the DNA evidence corroborating the victim's account.

It is thus not apparent from the record that the outcome would have been different if Appellant had timely access to the discovery materials to prepare for cross-examination. As to Appellant's second point, that he *may* have decided to request the reappointment of counsel at an earlier stage if he had had access to the discovery materials, his allegation is far too speculative to warrant relief on direct appeal. Even if he had requested the reappointment of counsel at an earlier stage, there is no indication that counsel would have been able to achieve a different result.

Thus, we decline to hold that Appellant received ineffective assistance of trial counsel on the face of this record. As we have rejected Appellant's other arguments on appeal, we affirm his conviction and sentence.

AFFIRMED.

WETHERELL and WINSOR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, Kevin P. Steiger, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Samuel B. Steinberg, Assistant Attorney General, Tallahassee, for Appellee.