DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEREN DESHUNE DELANCY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-43

[September 20, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Lawrence M. Mirman, Judge; L.T. Case No. 432015000390CFAXMX.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, Luke R. Napodano and Ilana Mitzner, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Defendant appeals a final judgment of conviction and sentence of ten years for high speed or wanton fleeing and resisting an officer without violence. He challenges his conviction by contending that his trial counsel was ineffective on the face of the record by failing to object to the impeachment of his star witness based upon pending charges against that witness. He further challenges his sentence as based on a misapprehension of fact and violation of the equal protection clauses of the United States and Florida Constitutions. We affirm the convictions, concluding that even if his counsel were ineffective, appellant has not shown that there was a reasonable probability that the result of the proceedings would have been different, given the other evidence presented. As to the sentence, while it is stiff, the sentence is within the maximum statutory limit, and it is neither based on a misapprehension of fact nor constitutionally infirm.

At trial, three officers involved in the apprehension of appellant testified. The first officer testified that he was patrolling in his sheriff's vehicle when he noticed that the driver of a vehicle passing in the opposite direction was not wearing a seatbelt and ducked down to conceal his face. A passenger was also in the vehicle. The officer made a U-turn to effect a traffic stop. A second officer in the area passed by the stopped vehicle, and as he did he had a direct view of the driver, whom he was able to identify in court as the appellant.

The first officer stopped the vehicle; however, when he approached it, the driver sped off through a residential area and past a daycare center at speeds of over ninety miles an hour. The driver ran a red light and nearly lost control of his vehicle as he was turning a corner. A twelve-year-old girl was in the vicinity and pointed the officers in the direction that the vehicle fled. A third deputy saw the driver stop and run away from his vehicle. The deputy followed the driver on foot through a residential neighborhood, losing sight of him for a few seconds, but then he saw him arguing with a woman and trying to get into her house. He was sure that this man was the driver.

The deputy ordered him to stop, but the driver entered the house. One of the two other officers then arrived, and they entered the house after the driver. The suspect eventually emerged from a room, drenched in sweat and out of breath. The officers detained him. The deputy testified the man who came out of the room was the same person and in the same clothes as the driver. He wore the same printed white shirt and long black shorts, but was wearing a different hat. The officer identified appellant as that individual. The second officer who helped chase the suspect into the house also identified the appellant and the clothes he wore. The third officer, who arrived after appellant was detained, testified that the person detained had the same clothes as the driver when he first saw him. A dashcam video from one officer's vehicle was also played for the jury, and it showed the officer running toward the house after spotting appellant.

Appellant's mother was the woman at the house where appellant was arrested. For the defense, she testified that appellant was at home with her all evening. They heard sirens late in the evening, and she went outside to investigate. She saw officers walking up the street and into her driveway. Her door was cracked open, and when the officer saw appellant, he said, "You're the one." The officers then entered her home with guns drawn. She stated that appellant was wearing a white shirt.

The defense also called McIntyre, the passenger in the fleeing car who had also been arrested that evening. He testified that the vehicle was being driven by his cousin, Parks, not the appellant. They were returning home from a construction job with his uncle. After they dropped off the uncle, police stopped them, and his cousin fled the scene. McIntyre stayed in the car and was detained by the deputies. He testified that his cousin Parks was wearing a black shirt and hat, and he had a similar complexion and beard as appellant.

McIntyre further testified that he did not know appellant and did not recognize him at trial. On cross-examination, the prosecutor noted that McIntyre was in jail clothes and questioned him about his many pending charges, including robbery with a deadly weapon, aggravated assault with a firearm, and grand theft. Defense counsel did not object to this line of questioning.

On rebuttal, the State recalled the three officers. The first officer testified that he knew Parks, and he had no doubt that Parks was not the driver. The other officers testified that the driver was wearing a white shirt, not a black shirt, and introduced a booking photo which showed appellant in a white shirt.

After closing arguments, the jury found appellant guilty of high speed or wanton fleeing and resisting an officer without violence. The court adjudicated appellant guilty and sentenced him to ten years in prison for the fleeing charge and to time served for resisting without violence. Appellant also filed two motions to correct his sentence, alleging racial disparity in sentencing. The court denied the first motion. It did not rule on the second motion; thus, it is deemed denied.

Appellant contends that his trial counsel was ineffective on the face of the record because he failed to object when the prosecutor impeached defense witness McIntyre by questioning him about his pending charges. Because claims of ineffective assistance of counsel are fact-specific, defendants generally should raise them in motions for postconviction relief. *Latson v. State*, 193 So. 3d 1070, 1073 (Fla. 1st DCA 2016). However, a claim of ineffective assistance may be considered for the first time on direct appeal if: the ineffectiveness is apparent on the face of the record; there is undisputable prejudice; and there is no conceivable tactical explanation for the conduct. *Hills v. State*, 78 So. 3d 648, 652 (Fla. 4th DCA 2012). "This exception is rarely applicable," but if so, this court reviews de novo whether the claim meets the deficiency and

prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* To show prejudice,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694; *see Thompson v. State*, 990 So. 2d 482, 488, 490 (Fla. 2008) (finding prejudice is not whether deficient conduct "more likely than not" affected the trial outcome, but whether it undermined confidence in the outcome and rendered it unreliable).

Appellant claimed, in his defense, that he was not in the vehicle. He argues McIntyre was his star witness, but the State destroyed his credibility by improperly questioning him about his pending felony charges. The prosecutor also highlighted the fact that McIntyre was in jail ("I couldn't help but notice your attire, are you currently incarcerated?"). Appellant contends the questioning resulted in fundamental error, or his attorney's failure to object was ineffective assistance apparent on the face of the record.

The State concedes, and we agree, it was improper for the State to cross-examine McIntyre on his pending charges. *Fulton v. State*, 335 So. 2d 280, 282-83 (Fla. 1976) (holding the State may not question a defense witness on his or her pending criminal charges of which he or she has not been convicted). Furthermore, there does not seem to be a strategic explanation for counsel's failure to object, given the number of pending charges discussed.

Nevertheless, under *Strickland*, the defense must show that this deficiency has undermined confidence in the outcome of the proceeding or that the error was fundamental such "that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Walden v. State*, 123 So. 3d 1164, 1166 (Fla. 4th DCA 2013).

Given the testimony and evidence, neither fundamental error nor *Strickland* prejudice has been shown. McIntyre's testimony that appellant was not the driver of the vehicle was cumulative to the mother's testimony that appellant was home with her. Testimony that is cumulative to other witnesses' testimony can render the improper impeachment harmless. *See Bedford v. State*, 589 So. 2d 245, 252 (Fla. 1991). Furthermore,

McIntyre testified that he did not know appellant. While improper impeachment of a defense witness may have a "spill-over effect" on the credibility of the defense where the witness is a friend or relative, *see Fulton*, 335 So. 2d at 285, where there is no connection between the witness and the defendant, the harmful "spill-over" effect is not present. *See Bedford*, 589 So. 2d at 252.

Here, the verdict was amply supported by the testimony of the three officers, two of whom positively identified appellant as the driver of the vehicle. The dashcam video of the officer rushing into the house directly refuted the mother's testimony that the officers observed appellant through an open door before entering the house, and it is consistent with the officer's testimony. One of the officers knew Parks, whom McIntyre said was the driver, and testified that the driver was not Parks. Finally, the State never mentioned McIntyre's convictions in closing argument and did not seek to capitalize on the improper impeachment. *Compare with Roper v. State*, 763 So. 2d 487, 489 (Fla. 4th DCA 2000) (finding harmful error where during closing argument, the State focused on improper impeachment evidence and appellant's testimony that he lived in jail, telling the jury this was relevant to his credibility).

Because the appellant has not shown fundamental error or *Strickland* prejudice, we affirm his conviction on this issue and the remaining issues raised.

Appellant also challenges his ten-year sentence. His lowest permissible sentence under the Criminal Punishment Code was 13.5 months, but his maximum possible sentence for high speed fleeing and eluding was fifteen years. He had a total of forty-six sentencing points. At sentencing, the trial court found the circumstances of the car chase, including travelling at very high rates of speed through a residential neighborhood and close to daycare facilities, warranted a higher sentence. The evidence showed that a twelve-year-old girl was endangered in the chase. The court acknowledged that it had sentenced others convicted of the same crime to lesser sentences, but that the circumstances of this crime, and the danger to which it exposed the community, required a more severe sentence. The court considered mitigating factors, including that appellant appeared before the court despite his serious charges and that his "significant felony record" did not include violent crimes. However, the judge found the mitigating factors didn't "add up to much" considering the nature of his crime. It then imposed the ten-year sentence.

After sentencing, appellant filed two motions pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), which permits a court to correct a sentencing error pending appeal. In his first motion, he argued the court sentenced him based on a misapprehension of fact—that the court sentenced other people who had committed the same crime to much lesser sentences. Thus, he contended the court violated his due process rights. He attached the judgment and arrest affidavit from another case in which he claimed that the court had sentenced a defendant to significantly less time where the crimes were very similar. The court denied his first motion, finding no sentencing error.

Later, appellant filed a second motion, again arguing that the court sentenced him based on a misunderstanding of its past sentencing practices. He summarized four cases where the same trial court sentenced defendants, whose lowest permissible sentences ranged from about fifteen to thirty months, to much lesser sentences for the same offense of high speed fleeing (the highest sentence was six years). He attached various court documents from those cases. The court did not rule on this second motion within sixty days, so it is deemed denied. Fla. R. Crim. P. 3.800(b)(2)(B).

Appellant's motions may not be properly entertained pursuant to rule 3.800(b)(2). That rule is not used to address errors in the sentencing process, but errors in an order entered as a result of the sentencing process. *Jackson v. State*, 983 So. 2d 562, 572-74 (Fla. 2008) (holding a defendant improperly files a rule 3.800(b) motion if his or her claim deals with an error in the sentencing process, rather than the sentencing order; if he or she does so, this court applies "the general rule that an unpreserved error may be considered on appeal only if the error is fundamental"); *see Josephs v. State*, 86 So. 3d 1270, 1272 (Fla. 4th DCA 2012) (finding defendant does not preserve a claim that the sentencing court relied on improper factors with a rule 3.800(b)(2) motion; however, this court may review procedural issues for fundamental error or a denial of due process). Because the appellant's claim is not a sentencing error, the contemporaneous objection rule applies, or the error must be fundamental. *See Jackson*, 983 So. 2d at 576.

Even if the motions were proper to preserve the issue, we conclude that they do not require reversal of the sentence. Although appellant contends in his motions that the trial court's sentence relied on a misapprehension of the court's sentencing decisions in other cases, the court itself noted that it had sentenced other defendants committing the same crime to less time. It considered the facts of this case and the high-speed chase through

the residential neighborhood to be more egregious than those cases. Sentencing is a highly fact-intensive decision based upon the particular circumstances of each defendant's case. While appellant suggested that other cases had similar facts, the trial court denied the motion, and we cannot conclude that the court either misapprehended the facts of other cases or that they were so similar as to call into question the fairness of this sentence. *See Maddox v. State*, 760 So. 2d 89, 99 (Fla. 2000) (noting court must have sufficient factual record on appeal to determine if fundamental error occurred).

In his rule 3.800(b)(2) motions, appellant also alleged that a racial disparity existed in sentences in the Nineteenth Judicial District. He noted that in cases where the defendants' CPC's lowest possible sentence score were similar to his, the average sentence was 20.44 months for white defendants, but the average sentence for black defendants was 40.28 months. In contrast, he received a ten-year sentence. In his second motion, appellant provided the Department of Corrections sentencing information from 2016-17, showing there were seventy-six defendants sentenced in the Nineteenth Circuit who scored from 13.5 to 15.5 months. He again argued that there was pronounced racial disparity because the average white sentence was 31.42 months, but the average black sentence was 39.67 months. His sentence was 120 months.

This issue may not be raised as a rule 3.800(b)(2) motion, as it does not constitute a claim of error in the sentencing order. *See Jackson*, 983 So. 2d at 572-74. Appellant did not raise this issue at sentencing. However, it may be raised as a question of fundamental error.

Appellant asks this court to reconsider the legal principle that a defendant cannot successfully challenge his sentence based on statistical evidence of racial disparity in sentencing. *McCleskey v. Kemp*, 481 U.S. 279, 292-94 (1987) (finding a defendant who alleges an equal protection violation must prove both a discriminatory purpose and effect; he or she must present evidence specific to his own case, instead of relying on statistical evidence of disparities); *Foster v. State*, 614 So. 2d 455, 463 (Fla. 1992) (citing *McCleskey* to find the defendant could not prove that prosecutors acted with discriminatory purpose by presenting statistics that white-victim defendants were more likely to be convicted of first-degree murder; he presented no evidence of purposeful discrimination in his own case); *Hartley v. State*, 650 So. 2d 1044, 1048-49 (Fla. 4th DCA 1995) (holding the defendant was not entitled to a hearing on his equal protection claim, where he presented statistics that more minorities were

assigned to the habitual felony offender division than whites, because his claims rested on actions of unrelated decision makers).

It is not within our province to reconsider and reject the United States Supreme Court's determination in *McCleskey*. Like the defendants in the *McCleskey* line of cases, appellant has not proven that the judge acted with discriminatory purpose in his case. As the State notes, each case is unique. For example, appellant referenced nine white defendants who had CPC scores similar to appellant's score, but who received lesser sentences. However, they committed different crimes and had different criminal histories. Here, the court weighed appellant's criminal background, as well as what it viewed as mitigating and aggravating circumstances of the crime.

Moreover, the statistical evidence that minority defendants received sentences on average approximately eight months longer than white defendants with similar CPC scores cannot explain the eighty-month difference between the sentence in this case and the average sentence for other similarly-scored minority defendants. From the judge's comments at sentencing, he was motivated to punish the defendant for the danger in which he placed the community by his conduct and not any racial animus.

The CPC allows the judge to sentence a defendant anywhere from the least possible sentence score to the statutory maximum. Here, the judge did not sentence the appellant to the maximum of fifteen years. "[C]urrent Florida law gives a sentencing judge unlimited discretion to sentence a defendant up to the maximum term set by the legislature for a particular crime." *Alfonso-Roche v. State*, 199 So. 3d 941, 946 (Fla. 4th DCA 2016) (Gross, J., concurring); *see also* § 921.0024 (2), Fla. Stat. (2016) ("The permissible range for sentencing shall be the lowest permissible sentence up to . . . the statutory maximum . . . ."). The court did not deviate from the statute.

While the DOC statistics showing a disparity between average sentences for white defendants and minority defendants are disturbing, they do not show that racial bias motivated the decision in this case. We note that based upon recent investigations by the Sarasota Herald Tribune into racial disparity in sentencing,[1] the Legislature has authorized a study

---

[1] Josh Salman, Emily Le Coz, & Elizabeth Johnson, *Bias on the Bench*, SARASOTA HERALD-TRIBUNE (Dec. 8, 2016), http://projects.heraldtribune.com/bias/; Josh Salman, Emily Le Coz, & Elizabeth Johnson, *Tough on Crime: Black Defendants*

of fairness in sentencing. *Florida Senate Bill 1392* (2018), https://www.flsenate.gov/Session/Bill/2018/01392. From that study, we certainly hope and desire that any necessary protections against actual racial bias in sentencing can be implemented to assure that it is not present in the criminal justice system.

For the foregoing reasons, we affirm the conviction and sentence of appellant.

MAY and FORST, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***

---

*Get Longer Sentences in Treasure Coast System*, SARASOTA HERALD-TRIBUNE (Dec. 8, 2016), http://projects.heraldtribune.com/bias/bauer.